# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL NO. 07-60013 |
| VERSUS | * | JUDGE MELANCON |
| CYNTHIA M. ELBERSON | * | MAGISTRATE JUDGE HILL |

## REPORT AND RECOMMENDATION

Pending before the undersigned for Report and Recommendation is the Petition for Writ of *Habeas Corpus* pursuant to 28 U.S.C. § 2255 filed by petitioner, Cynthia M. Elberson ("Elberson").  [rec. doc. 21].  The Government has filed an Answer and Memorandum in Support.  [rec. doc. 27].  When petitioner filed the instant Motion she was  incarcerated at the Federal Prison Camp in Bryan, Texas.  However, it appears that she has now been transferred to a halfway house. [*See* rec. doc. 33].

In the instant motion to vacate, petitioner asserts several claims for relief: (1)  that she received ineffective assistance of counsel because her attorney, Thomas E. Guilbeau ("Guilbeau"), failed to appeal, or advise her of the viability of an appeal, on the court's two point enhancement of her sentencing guideline range pursuant to § 3B1.3[1], for abuse of a position of trust;  (2)  that her sentence was imposed in violation of her Sixth Amendment rights as set forth by the United States Supreme Court in *Apprendi v. New Jersey,* 530 U.S. 466 (2000) and *Blakely v. Washington*, 542 U.S. 296 (2004); and (3) that

---

[1]Petitioner incorrectly cites USSG §  3B1.1; however, the record reveals that the enhancement was under USSG § 3B1.3. *See* rec. doc. 17, ¶ 16, Pre-Sentence Investigation Report.

the district court erred by imposing a two point enhancement of petitioner's sentencing guideline range under § 3B1.3 for abuse of a position of trust.

For the following reasons, the undersigned recommends that the Motion be **DENIED AND DISMISSED WITH PREJUDICE**.

## STATEMENT OF CLAIM

On June 17, 2007, after waiving indictment pursuant to a plea agreement, petitioner pleaded guilty to Count One of a Bill of Information charging her with Bank Fraud in violation of 18 U.S.C. § 1344. [rec. doc. 1, 8, 9 and 12]. The factual basis for her plea indicates that Elberson was employed as the office manager for Roggwiller Tannery of Louisiana, Inc. ("RTL"), wherein, "over the years of her employment . . . [she] gained trust and confidence from her superiors, and . . . was responsible for issuing company checks from the RTL account at Hiberia National Bank to pay vendors and payroll taxes." However, she devised a scheme whereby, for over three years, she converted RTL checks to cashier's checks payable to a business she owned and operated with her husband, and, additionally forged the signatures of authorized signers for the RTL account on checks payable to her business. As a result, she transferred $537,300.99 from RTL to her business. [rec. doc. 12-4].

Following preparation of a Pre-Sentence Investigation Report (PSI), Guilbeau filed an objection to paragraph 16 of the PSI, arguing that a two level enhancement under USSG § 3B1.3 for abuse of a position of trust was not appropriate because although Elberson held the title of office manager, she possessed "no managerial discretion" and

her "limited discretion . . . was circumscribed by the company's procedures of ordinary checks and balances that failed due to the negligence and/or incompetence of the individuals in charge of the system . . . ." [rec. doc. 18].

In response, the Probation Officer cited comment Application Note 1 to § 3B1.3, which explains that "'public or private trust' refers to a position of public or private trust characterized by professional or managerial discretions.  Persons holding such positions ordinarily are subject to significantly less supervision than employees whose responsibilities are primarily non-discretionary in nature.  The position of public or private trust must have contributed in some significant way to facilitating the commission of concealment of the offense.  In this matter, the factual stipulation notes that over the years of her employment, the defendant gained the trust and confidence from her superiors.  As office manager, she was responsible for issuing company checks from the RTL account to pay vendors and payroll taxes.  As office manager, the defendant was subject to less supervision than other employees which allowed her to facilitate the commission and concealment of the offense for a period of over three years.  As such, it is believed the two-level enhancement is applicable." [rec. doc. 17].

On September 25, 2007, petitioner appeared before the Court for sentencing. Defense counsel argued that while it is true that Elberson was subject to less supervision than other employees by virtue of her position as office manager, she had no managerial or officer discretion as contemplated under the Guideline, because she was not an attorney or an agent.  Counsel further argued that while Elberson controlled where the

finances of the company would go, that was merely an element of fraud that she had pled to. [tr. pg. 14-15]. Judge Melancon summarized his view stating  that Elberson "had the discretion to send the money out.  The fact that their CPA or checks and balances didn't catch her for three years doesn't give a whole lot of sway to her position that [she] really wasn't in a position of trust even though [she] could direct where the money went and, by the way, the money that [she] sent was to [her] own benefit."  [*Id.* at pg. 13].

After conferring with Elberson, defense counsel advised the court that he would not present testimony from Elberson on the issue. [*Id.* at 16-17].  Accordingly, noting the court's candor with defense counsel and defense counsel's candor with the court, Judge Melancon found there was "no doubt that the position of the probation office has taken in response to he objection is correct under the law and the facts of this case."  Therefore, the court overruled the objection. [*Id*. at 17-18].  Petitioner was sentenced to thirty-three months imprisonment, the lowest term of imprisonment under the applicable sentencing guideline range of thirty-three to forty-one months. [*Id*. at 34 -36].

The instant § 2255 motion was filed on September 19, 2008.  In her first claim for relief, petitioner contends that her retained attorney, Guilbeau, failed to appeal on her behalf or to advise her of the viability of an appeal on the court's decision overruling her objection to the two point enhancement of her sentencing guideline range under § 3B1.3, for abuse of a position of trust.  She did not state whether or not she requested that Guilbeau file a notice of appeal.

In response to the Motion, the government contends that petitioner did not ask Guilbeau to appeal on her behalf, and that, in any event, Guilbeau's fee did not include appellate services, as Guilbeau's contract with petitioner limited his representation to the filing of pre-trial motions and plea bargaining.

In support of that position, the government submitted a December 17, 2008 letter received from Guilbeau, attached to which is a copy of his contract of employment.  The government also noted that since there were no viable grounds for appeal, Guilbeau's "failure to file a notice of appeal and possible failure to consult with the defendant" cannot be considered ineffective assistance of counsel.  [rec. doc. 27].

The record reveals that petitioner was advised by the Court of her right to appeal her sentence and the time limitation for filing same, as well as her right to court appointed counsel if she was unable to afford the services of an attorney to handle an appeal.  [sent. tr. pgs. 40-41].  The record further reveals that Elberson stated that she understood this right. [*Id*. at 41].

Because  there was no competent evidence in the record regarding the parties positions as to what transpired after sentencing, an evidentiary hearing to address petitioner's first claim for relief, that petitioner received ineffective assistance of counsel due to counsel's failure to file a direct appeal on petitioner's behalf, was scheduled for March 11, 2009.  [rec. doc. 28].  However, because petitioner was enrolled in college courses, she requested that the hearing be continued pending completion of her courses in May, 2009.  [rec. doc. 31].  Accordingly, the evidentiary hearing was canceled without

date and petitioner's appointed counsel, Rebecca Hudsmith, was directed to file a Motion to Reset the hearing no later than June 15, 2009. [rec. doc. 32].  Thereafter, on June 15, 2009, petitioner filed a Motion to Reset the hearing.  Petitioner requested, however, that because she was set to be released to a halfway house at the end of September, 2009, that the hearing be held no earlier than October 15, 2009. [rec. doc. 33].  Accordingly, the evidentiary hearing was reset for November 10, 2009. [rec. doc. 34].

The evidentiary hearing was conducted on November 10, 2009.  Testifying at the hearing were petitioner, Elberson and her retained attorney, Guilbeau.

Elberson testified that she contracted with Guilbeau to handle her case through sentencing.  She admitted that, at sentencing, the court had specifically advised her of her right to appeal her sentence, to which she responded to the court that she understood. Despite her sworn testimony at the sentencing hearing, Elberson testified that she did not understand that she could appeal her sentence without also appealing her conviction. Rather, she claimed that it was not until she was imprisoned, that she learned she could appeal only her sentence.  Elberson further testified that after sentencing, she and Guilbeau had a discussion outside the courtroom.  During that discussion, Elberson stated that Guilbeau had also advised her of her right to appeal.  However, she told Guilbeau that she didn't understand what she could appeal, and that Guilbeau offered no guidance.

Petitioner at no time told Guilbeau that she wanted to appeal.  Elberson additionally testified that she did not self-surrender for a period of shortly over thirty days.  During this period, beginning approximately four or five days after her sentencing

6

until the day she self-surrendered, Elberson testified that she tried to call Guilbeau, but her calls went unanswered.

With regard to the discussion he and Elberson had after sentencing, Guilbeau testified that both he and Elberson were happy with the sentence which was imposed.  He nevertheless asked Elberson if she wanted to appeal, and she expressly told him that she did not want to appeal, stating "no, no, no, this is really good [or] words to that effect." Guilbeau testified that he does not handle appeals and that there is a standard clause in his contract so providing.  However, had Elberson told him she wanted to appeal, he would have filed a notice of appeal on her behalf to protect her rights.

Guilbeau further testified that after Elberson's sentencing, he "absolutely one hundred percent" did not receive any communication or calls from Elberson.  Prior to the hearing, Guilbeau testified that he had reviewed his file and verified that it contained no correspondence from Elberson following her sentencing.

Finally, Guilbeau testified that Elberson was an intelligent woman and that he believed that she understood that an appeal of her sentence would have included the issue about the abuse of trust enhancement and that she was aware of the advantages and disadvantages of pursuing an appeal; however, both agreed that she received a "good sentencing", the sentence imposed being at the low end of the Guidelines, and that Elberson therefore told him "I'm not going to appeal that, or words to that effect."

## LAW AND ANALYSIS

### I.  Ineffective Assistance of Counsel

In *Roe v. Flores-Ortega*, 528 U.S. 470, 120 S.Ct. 1029 (2000), the United States Supreme Court set forth the standards applicable to a claim of ineffective assistance of counsel due to counsel's failing to file a notice of appeal. When discussing the first *Strickland v. Washington,* 466 U.S. 668 (1984) inquiry, that is, whether counsel's performance was deficient, the Court reaffirmed that a "lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable."  *Roe*, 120 S.Ct. at 1035 *citing Rodriquez v. United States,* 395 U.S. 327, 89 S.Ct. 1715, 23 L.Ed.2d 340 (1969) and *Peguero v. United States*, 526 U.S. 23, 28, 119 S.Ct. 961, 143 L.Ed.2d 18 (1999).  Moreover, the Court reaffirmed that "at the other end of the spectrum, a defendant who explicitly tells his attorney not to file an appeal plainly cannot later complain that, by following his instructions, his counsel performed deficiently."  *Id. citing  Jones v. Barnes*, 463 U.S. 745, 751, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983).

For cases that lie between those poles, that is, where the defendant neither instructs counsel to file an appeal nor asks that an appeal not be taken, an antecedent question must be answered, specifically, "whether counsel in fact consulted with the defendant about an appeal."  *Id*.  The term "consult" was defined in this context as "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes."  *Id*.  Thus, the court held that "[i]f counsel has

consulted with the defendant, the question of deficient performance is easily answered: Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal." *Id*.

With respect to the element of prejudice, the Court articulated that a defendant must demonstrate that, but for counsel's deficient performance, she would have appealed. Accordingly, "when counsel's deficient performance deprives a defendant of an appeal that he otherwise would have taken, the defendant has made out a successful ineffective assistance of counsel claim entitling him to an appeal." *Id*. at 484.

Based on Guilbeau's testimony, which this court finds more credible than the testimony of Elberson, this case falls squarely within the second *Roe* scenario.  Elberson expressly told her attorney, Guilbeau, that she did not want to appeal.  The fact that Elberson received the lowest possible sentence within the Guidelines sentencing range found applicable to her, supports, and corroborates, Guilbeau's testimony that Elberson declined an appeal because she was pleased with her sentence.  Indeed, had Elberson wanted to appeal, Guilbeau testified that he would have filed a notice of appeal on her behalf to protect her rights, despite the fact that he does not do appellate work, a fact admittedly known by Elberson.

Moreover, while Elberson now claims that she did not understand she could have appealed only her sentence, that claim is not credible, given that Judge Melancon expressly advised Elberson of her "right to appeal any *sentence* that I've imposed", a right

that Elberson stated on the record, while under oath, that she understood. [sent. tr. pg. 40 (emphasis added)].

Finally, while Elberson now contends that she tried to contact Guilbeau within the ten day period following her sentencing, presumably to request an appeal, Guilbeau was adamant that Elberson never called, corresponded or attempted to communicate with him, and that this is corroborated by his file, which contains no such indication.

The court also notes that Elberson's testimony as to when she learned of her right to appeal only her sentence is suspect.  Elberson testified that she learned this information from inmate counsel in November and December 2007, yet despite the fact that she worked in the law library, the instant Motion was not filed until almost one year later, in September 2008.

Because this case falls squarely within the second *Roe* scenario, Elberson cannot now complain that her counsel, Guilbeau, performed deficiently.  *Roe*, 120 S.Ct. at 1035. Moreover, the antecedent question which must be answered with respect to those cases falling within the third *Roe* scenario need not be addressed in this case as Elberson suggests.  Accordingly, under the circumstances presented, the instant claim does not entitle Elberson to any relief as she has failed to present a successful ineffective assistance of counsel claim.

## II.  3B1.3 Enhancement

It is clear that petitioner's claim for improper enhancement under the Guidelines is procedurally barred because petitioner did not directly appeal her conviction or sentence.

10

*See United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992) ("A district court's technical application of the Guidelines does not give rise to a constitutional issue" and therefore is "not cognizable under the limited scope of relief available under 28 U.S.C. § 2255."). The claim is also without merit.

The application of § 3B1.3 is a "sophisticated factual determination." *United States v. Fisher*, 7 F.3d 69-70 (5th Cir. 1993). For purposes of this enhancement, a "position of trust" is a term of art that must be defined through reference to the guideline commentary and our case law. *United States v. Ollison,* 555 F.3d 152, 165 (5th Cir. 2009) *citing  Stinson v. United States*, 508 U.S. 36, 38, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993). Section 3B1.3 of the 2006 Sentencing Guidelines states in pertinent part: "If the defendant abused a position of public or private trust . . . in a manner that significantly facilitated the commission or concealment of the offense, increase by 2 levels . . . ." U.S.S.G. § 3B1.3.

Application Note 1 of § 3B1.3 provides in pertinent part: "'Public or Private trust' refers to a position of public or private trust characterized by professional or managerial discretion (i.e., substantial discretionary judgement that is ordinarily given considerable deference). Persons holding such positions ordinarily are subject to significantly less supervision than are employees whose responsibilities are primarily non-discriminatory in nature. For this enhancement to apply, the position of public or private trust must have contributed in some significant way to facilitating the commission or concealment of the offense (e.g., by making the detection of the offense or the defendant's responsibility for

the offense more difficult)."  Thus, the Fifth Circuit has held that an abuse of trust enhancement is appropriate if the defendant (1) held a position of trust, (2) that she used to significantly facilitate the commission or concealment of the crime. *United States v. Kay*, 513 F.3d 432, 459 (5th Cir. 2007).

A position of trust is characterized by (1) professional or managerial discretion (i.e., substantial discretionary judgment that is ordinarily given considerable deference), and (2) minimal supervision. *See* U.S. Sentencing Guidelines Manual § 3B1.3 cmt. n.1 (2006); *see also United States v. Brown*, 7 F.3d 1155, 1161 (5th Cir.1993) ("The primary trait that distinguishes a person in a position of trust from one who is not is the extent to which the position provides the freedom to commit a difficult-to-detect wrong").

The Fifth Circuit has explained that "to determine whether the position of trust 'significantly facilitated' the commission of the offense, [a] court must decide whether the defendant occupied a superior position relative to all people in a position to commit the offense, as a result of [his] job." *United States v. Fisher*, 7 F.3d 69, 70-71 (5th Cir.1993). In *United States v. Scurlock*, 52 F.3d 531 (5th Cir.1995), the Fifth Circuit further noted that the appropriate comparison is between the defendant and the "public at large." *Id*. at 541. Thus, "the proper inquiry is not whether [the defendant] occupied a position superior to his co-workers . . . , but whether his position afforded him an opportunity not enjoyed by the general public." *United States v. Powers*, 168 F.3d 741, 752 (5th Cir. 1999) *citing United States v. Brown*, 941 F.2d 1300, 1305 (5th Cir. 1991).

12

In this case, Elberson argues that although she had the title of office manager at RTL, she was nevertheless more akin to a low level employee, performing minor clerical functions.  However, the record does not support this contention.  To the contrary, the PSI indicates that the owners of RTL reside in Paris, France, far from where Elberson was perpetrating her fraudulent scheme. [rec. doc. 17, ¶ 4].  Under these circumstances, the victimized company was entitled to rely on the honesty and integrity of Elberson in carrying out her duties.

Moreover, as office manager, Elberson was admittedly responsible for issuing company checks to pay vendors and to make payroll tax payments, and RTL management believed that Elberson was making these payments to Hibernia National Bank which would then wire the funds to the IRS. [*Id*.; sent. tr. pg. 15; rec. doc. 12-4].  Elberson was in a special position, apparently not enjoyed by her co-workers, which allowed her not only access to RTL's account at Hibernia National Bank, but also obviously gave her the authority to control and direct where RTL's money would be sent.

Furthermore, Elberson's position provided her the freedom to commit her scheme. Elberson's unique access to, and knowledge of, RTL's private business account, enabled her to divert, convert and transfer over $500,00.00 RTL's funds, to her account at Iberia Bank without detection for a period in excess of three years.

While the undersigned acknowledges that "the adjustment under § 3B1.3 is not intended to be routinely applied to every employee fraud or embezzlement case", and that the Fifth Circuit has declined to extend application of § 3B1.3 to a secretary who used her

13

employer's charge card, issued to a number of other employees, for personal purchases. *United States v. Ollison²,* 555 F.3d 152, 166-167 (5th Cir. 2009) *citing United States v. Edwards*, 325 F.3d 1184, 1187 (10th Cir.2003) and *United States v. Garrison*, 133 F.3d 831, 838 (11th Cir.1998) (stating that "because there is a component of misplaced trust inherent in the concept of fraud, a sentencing court must be careful not to be 'overly broad' in imposing the [§ 3B1.3] enhancement") (internal citation omitted).

Nevertheless, the undersigned finds that under the facts of this case, Elberson was not an ordinary clerical employee as she suggests.  To the contrary, Elberson exercised the discretionary authority to authorize and direct payment and transfer of funds from the RTL account.  Accordingly, her position is more akin to that of the defendant in *United States v. Kay*, 83 F.3d 98 (5th Cir. 1996), an accountant and bookkeeper, who, like Elberson, used forgeries and insider knowledge to embezzle substantial amounts from her employer's account, and, accordingly like Elberson, was properly subject to the two-level abuse of trust enhancement, following her conviction for bank fraud.

For these reasons, the undersigned finds that the Court did not err in applying the § 3B1.3 enhancement to Elberson's sentencing Guideline range.

## III.  *Apprendi/Booker* **Claim**

Elberson argues that because the court calculated her Guideline sentencing range on the basis of a fact (that she abused a position of trust), which was not found by a jury

---

²Ollison was charged with three counts of theft from an organization receiving federal funds, the Dallas Independent School District, in violation of 18 U.S.C. § 666(a)(1)(A).

14

or admitted by her, and that she was therefore sentenced in violation of the principles set forth by the United States Supreme Court in *Apprendi v. New York*, 530 U.S. 466, 590 (2000) and *Blakely v. Washington*, 542 U.S. 296 (2004).  The court construes this claim as asserted under *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738 (2005), which extended the holdings of *Apprendi* and *Blakely* to federal sentencing.  While it appears that Elberson's *Booker* claim is procedurally barred because she did not directly appeal her conviction or sentence, the claim is nevertheless without merit.

In holding that the Sentencing Guidelines were advisory only, the Supreme Court in *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), eliminated the Sixth Amendment concerns that prohibited a sentencing court from finding all facts relevant to sentencing within the statutory punishment range.  *See United States v. Prodencio,* 250 Fed. Appx. 43, 44 (2007) (unpublished) and *United States v. Mares*, 402 F.3d 511, 518-19 (5th Cir. 2005).  Indeed, the *Booker* Court explained that "when a trial judge exercises his discretion to select a specific sentence within a defined [statutory] range, the defendant has no right to a jury determination of the facts that the judge deems relevant." *Id*. at 233; *Mares*, 402 F.3d at 518.  For a violation of 18 U.S.C. § 1344, the statutory maximum sentence is 30 years imprisonment.  Petitioner received a 33 month sentence which is well within this statutory range.  Hence, the court was within its constitutional authority in finding the facts that led to this discretionary sentence within the statutory range. No *Booker* violation occurred.

15

Finally, under *Rita v. United States*, 551 U.S. 338, 127 S.Ct. 2456, 168 L.Ed.2d 203 (2007), because Elberson's sentence was within the properly calculated advisory range recommended by the Guidelines and further because there is nothing extraordinary about petitioner's case, the sentence is presumed reasonable. *Id.*, at 351, 127 S.Ct. at 2465. Moreover, when imposing Elberson's sentence, Judge Melancon expressly found that the Guidelines determination set forth in the PSI "reasonably addresses the criminal conduct in question." [sent. tr. pg. 35]. It is clear that Judge Melancon did not abuse his sentencing discretion. Elberson's sentence was at the low end of the Guidelines range, was reasonable based on the particular facts presented, was procedurally sound in that it was rendered after consideration and rejection of Elberson's objection and, in accordance with the above analysis, fell within the correctly calculated advisory Guidelines range. *See Gall v. United States*, 552 U.S. 38 (2007).

## CONCLUSION

For the foregoing reasons, **IT IS RECOMMENDED** that the instant § 2255 Motion be **DENIED WITH PREJUDICE**.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the district judge at the time of filing.

16

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  *See, Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

April 12, 2010, Lafayette, Louisiana.

C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE

17